JAGONZALES, Judge.
Cheryl Ann Richard, individually and as tutrix of her minor child, Junia Richard, filed suit on April 30, 1993, against McCrory Corporation. Ms. Richard alleged that on May 9, 1992, four-year-old Junia was injured in the ladies room at MeCrory’s store on Third Street in Baton Rouge when an employee of MeCrory’s closed the restroom door on Ju-nia’s finger. Junia’s ring finger was smashed and the tip of the finger cut off. Ms. Richard alleged that a mechanical spring loaded closing device on the restroom door contained a vice or defect that caused an unreasonable risk of harm, resulting in strict liability, and further, alleged that MeCrory’s and its employee were negligent.
After trial on the merits, the trial court ruled in favor of the Ms. Richard, finding that “McCrory Corporation, defendant herein, breached its duty of care towards the plaintiff, which breach caused damages to the plaintiff.” The court further found the plaintiff free of fault, and awarded general damages in the amount of $6,500.00 and special damages in the amount of $3,421.25.
McCrory Corporation is appealing this judgment, and makes three assignments of error.
1. The trial court committed reversible error in finding for plaintiff in that plaintiff failed to prove the allegation that MeCrory’s was strictly hable for an automatic closure mechanism on the restroom facility door which allegedly contained a vice or defect which created an unreasonable risk of harm to plaintiff herein.
2. The trial court committed reversible error in finding for plaintiff in that plaintiff failed to show that a MeCrory’s employee was even involved in the alleged incident.
3. The trial court committed reversible error in finding for plaintiff, in that plaintiffs failed to meet their burden of proof to show negligence on the part of an alleged employee in its “failure to observe the minor child standing next to the restroom facility door and take proper precaution to prevent injury to petitioner, Junia Richard.”
ASSIGNMENT OF ERROR NO. 1
Our review of the record reveals that the trial court based its finding of liability on *373 negligence, not strict liability, therefore, this assignment of error has no merit.
I ¡¡ASSIGNMENT OF ERROR NO. 2
We are aware of McCrory Corporation’s argument that their store employee was not involved in this accident. That determination is a factual finding by the trial court which cannot be overturned by this court in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether a factfinder’s conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact-finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. Department of Transportation and Development, 617 So.2d 880, 882 (La.1998); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
We accept the trial court’s finding of fact that it was a McCrory Corporation employee who came through the bathroom door when Junia was injured.
ASSIGNMENT OF ERROR NO. 3
The determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant’s substandard conduct was a cause-in-fact of the plaintiff’s injuries (the eause-in-fact element); (4) proof that the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of the liability or scope of protection element); and (5) proof of actual damages (the damages element). The first element is usually a judge question, and the other four are usually jury questions unless reasonable minds could not differ. Fowler v. Roberts, 556 So.2d 1, 4 (La.1989); Retif v. Doe, 93-1104 (La.App. 4th Cir. 2/11/94) 632 So.2d 405, 407, writ denied, 94-1000 (La. 6/17/94) 638 So.2d 1095.
We understand the law to be that a child of Junia’s age, 4 years old, is not capable of appreciating the hazard and thus is not guilty of any negligence. However, based upon Lthe facts in the record, we find no breach of a duty to the child by McCrory Corporation’s employee.
An examination of the photographs in evidence show that the space between the inside hinged portion of the door and the wall it opened against was extremely small, only a matter of inches. This space was barely large enough for a small child to stand behind the door once it opened. The door opened into a small hall-like area. Under normal circumstances, when the door opened it would almost hit this wall. An employee of the store, or anyone else opening the door could not possibly see a small child in this hazardous area, so they would be completely concealed by the door once it was opened.
*374 For there to be any negligence under the facts of this case, the store employee who opened the door would have to know of the hazard the child was exposed to, and have an opportunity to prevent that hazard. There is absolutely no evidence whatsoever in this record that the store employee either knew of the presence of the child, or had the time, ability or opportunity to prevent the closing of the door. There is no evidence of injury I r,caused' when the door was opened, it was only upon the door closing that Junia’s finger was smashed. Prior to opening the door, there was no gap in the hinge portion of the door into which the child could have inserted her fingers.
Nine-year old Marcella Blakes, who was supervising Junia at the time of the accident, described the accident as follows:
Q. And you took Junia into the bathroom?
A. Yes.
Q. Tell us what happened?
A. After she finished—
Q. She went to the restroom?
A. Yes. I went up there with her and then came out and she washed her hands and I told her to stand right there and I was washing my hands.
Q. So you all were still in the bathroom?
A. Yes, and she was sliding against the wall and I told her to stop so she stopped and I kept checking on her but when I
*375 heard the door open, I had looked back and I saw her when she came in and — I don’t know if Junia slided up [sic] against the door or if she tried to catch it, but I heard her when she was crying and [s]he said she had slammed her finger in the door. I called someone out of the bathroom but she didn’t come out so I—
Q. Okay. Slow down a little bit. Junia had used the bathroom?
A. Yes.
Q. And she was standing next to the wall. You told her to stand next to the wall.
A. Yes.
Q. And you’re washing your hands.
A. Yes.
Q. Where’s the sink and where’s the door? Is the sink on the opposite wall to the door, or are they side by side?
A. Opposite wall.
Q. So the sink would be on that wall and the door’s on this wall?
A. Yes.
Q. And where is the bathroom stall?
A. Next to the sink.
Q. Somebody coming in through the door would walk to the right?
A. Yes.
Q. This is a pretty small bathroom or a big bathroom?
A. Medium size.
Q. This person walking in, Junia is standing on the wall by the door. Does this door open into the bathroom or pull out?
A. Opens in.
Q. Opens into the bathroom, like this door right here pulls in?
A. Yes.
Q. Did you get a look at the person that came into the bathroom?
A. Yes, sir.
Q. If the door is behind you and you are standing at the sink washing your hands, did you turn and look when someone came in or did you look in the mirror or was there a mirror or how did you see this person?
A. I turned around and looked at her.
Q. You looked at her?
Yeah, because I thought it was Junia trying to open the door. liA.
Q. Did you get a real good look at this person.
A. Yes.
Q. So the next thing you know you heard Junia screaming. Did you turn back to the sink and then you heard her scream or what?
A. After I looked at the person, she went up into the stall and I was washing my hands and I was fixing to turn the water off and I heard Junia crying and I looked at her and I saw her hand was bleeding and she said she slammed her finger in the door and I was calling for help.
This is the only eyewitness version of the accident that we have and it shows no knowledge of the hazard to the child on the part of the store employee and no opportunity on the part of the store employee to prevent the injury. It is also internally inconsistent, because the injury to the child’s finger would occur immediately as the door was closing, within a matter of seconds of opening the door, and there would be no time for the store employee to get into the bathroom stall which would allow her to fail to observe the injury to the child and the child’s reaction.
There is further support that the person who opened the door could not have been aware of the hazard to the child, because even her nine-year old sister who was with her and watching her, did not appreciate the danger to the child.
The existence of a duty is a question of law, and similarly, the question as to whether a particular risk of harm is included within the scope of a particular duty is also a legal issue to be resolved by the court. Dillon v. Louisiana Power and Light, 557 So.2d 293, 295 (La.App. 4th Cir.1990), citing LeBlanc v. Wall, 430 So.2d 1130 (La.App. 1st Cir.1983), writ denied 438 So.2d 571 (La. 1983).
For the foregoing reasons, we find that the trial court committed legal error in finding that McCrory Corporation breached its duty of care towards the plaintiff. Therefore, the trial court judgment is REVERSED. Costs *376 are assessed against the plaintiff, Ms. Richard.
FITZSIMMONS, J., concurs in the result.